IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KARI ESCHLER,<br><br>Plaintiff,<br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, an Indiana corporation; and MEDICAL PRIORITY CONSULTANTS, INC., a Utah corporation, dba PRIORITY DISPATCH, INC.,<br><br>Defendants. | **MEMORANDUM DECIISON AND ORDER**<br><br>Civil No. 2:20-CV-467 DB<br><br>Judge Dee Benson |

Before the court is Defendant Medical Priority Consultants, Inc. dba Priority Dispatch, Inc.'s ("Priority Dispatch") Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion has been fully briefed by the parties, and the court has considered the facts and arguments set forth in those filings. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

## LEGAL STANDARD

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). The court must construe the complaint in the light most favorable to the Plaintiff, accept all well-pleaded factual allegations as true, and draw all reasonable inferences in favor of the Plaintiff. However, the court need not accept as true legal conclusions or unwarranted inferences. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The plausibility standard is not a "probability requirement," but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In considering the adequacy of a plaintiff's allegations in a complaint subject to a motion to dismiss, a district court not only considers the complaint, but may also "consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (district court may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice").

## **BACKGROUND**

For purposes of ruling on Defendant's motion to dismiss, the court accepts the following as true.

Plaintiff Kari Eschler initiated this action seeking to collect benefits under Defendant Priority Dispatch's employee life insurance plan.  Plaintiff is the mother of Shaela Savage ("Shaela"), a former employee of Defendant Priority Dispatch.  (Dkt. 2, Pl.'s Compl.  ¶ 2.) Shaela began working at Priority Dispatch in November 2016 and continued her employment until her death on October 29, 2019.  (*Id.*, ¶¶ 10, 19.)

Defendant Priority Dispatch offers a variety of benefit plans for eligible employees. Basic Life insurance and Voluntary Life insurance benefits are provided through "Group Life and Dependent Life Insurance for Employees of Priority Dispatch, Inc." (the "Plan").  (*Id.* ¶ 4.) The Plan was established pursuant to 29 U.S.C § 1001 *et seq.* of the Employee Retirement Income Security Act of 1974 ("ERISA").

Defendant Priority Dispatch is the Sponsor and Plan Administrator.  Defendant Lincoln National Life Insurance Company ("Lincoln National") is responsible for administering claims under the plan.  Lincoln National "has the sole discretionary authority to determine eligibility and to administer claims in accord with the interpretation of policy provisions, on the Plan Administrator's behalf."  (Dkt. 15-1, Certificate of Group Insurance, Summary Plan Description.)

Shaela was an "eligible employee" and had Basic Life insurance under the Plan.  The death benefit on the Basic Life insurance policy was approximately equal to Shaela's annual income.  Shaela did not elect Voluntary Life insurance at the time of her initial hiring in November 2016.  (Dkt. 17-1, Lincoln National Letter dated Jan. 9, 2020 at 3.)

In early 2019 Shaela became pregnant.  (Compl. ¶18.)  On April 8, 2019, Shaela applied for Voluntary Life insurance benefits[1] under the Plan.  (Compl. ¶ 13; Dkt. 15-2 at 1.)  Shaela's

---

[1] Referred to as "Personal Life insurance" in Plan documents.

3

requested death benefit for the Voluntary Life insurance was $150,000.  (Compl. ¶ 15.)  Because Shaela did not elect coverage for Voluntary Life insurance during her initial eligibility period (when hired) or during the Open Enrollment period, in order to complete the enrollment process she was required to submit "evidence of insurability."  (Dkt. 15-3 at 3.)

Shaela authorized Defendant Priority Dispatch to deduct the life insurance premiums from her payroll, and Defendant Priority Dispatch did, in fact, deduct from Shaela's paychecks the corresponding premiums for both the Basic Life and Voluntary life insurance policies.  (Compl. ¶ 52-53.)

Defendant Priority Dispatch "failed to alert[] Shaela that the routine evidence of insurability form needed to be completed."  (Compl. ¶ 54.)  This lack of notice combined with the withholding of premiums caused Shaela to believe she was insured with a $150,000 Voluntary Life insurance benefit.  (Compl. ¶¶ 52, 54-57.)

Plaintiff was the named beneficiary on Shaela's Basic Life insurance policy and Voluntary Life insurance policy.

On October 29, 2019, Shaela died from complications arising during or shortly after childbirth.  (Compl. ¶ 19.)  Shaela's child survived and is being raised by Plaintiff, the child's legal guardian and grandmother.

Shortly after Shaela's death, Plaintiff sent Lincoln National a claim for life insurance proceeds under both the Basic Life and Voluntary Life insurance policies.  Lincoln National paid to Plaintiff the Basic Life insurance claim in the amount of $38,292.80 plus interest.

However, Lincoln National denied Plaintiff's Voluntary Life insurance claim.  In a letter dated November 20, 2019, Lincoln National stated that because Shaela enrolled in Voluntary

4

Life outside of the Open Enrollment period, her enrollment was subject to "evidence of

insurability" which was never received by Lincoln National.

> The November 20, 2019 denial of Plaintiff's claim states, in pertinent part:
>
> [Shaela] enrolled in voluntary life insurance [on] 4/8/19 outside the approved open enrollment period of May 1st-May 31st.  Therefore, her benefit enrollment was subject to evidence of insurability in which non[e] [sic] was ever received.  Therefore, no benefits are payable at this time for voluntary life insurance.
>
> You or your authorized representative may request a review of your denied claim.  Such request must be made in writing and submitted to us at the address below within 60 days after you receive this denial notice.
>     …
> . . . .  In addition, once all required reviews of your claim have been completed; you have the right to bring a civil action under applicable law.

(Dkt. 15-2, Nov. 20, 2019 denial of claim from Lincoln National.)

The Certificate of Group Insurance explains the claim review process.  It provides that a claimant must bring two administrative reviews of an adverse claim decision before bringing a civil legal action under ERISA.  (Dkt. 15-1 at 23.)  The section labeled "Summary Plan Description" confirms this requirement and instructs the policy holder or beneficiary to "refer to your certificate of insurance for more information about how to file a claim, how to appeal a denied claim, and for details regarding the claim procedures."  (*Id.* at 29.)

The Certificate of Group Insurance reads as follows:

> **Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974).  Before bringing a civil legal action under the federal law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies.  Under the Policy, the claimant must first seek two administrative reviews of the adverse claim decision, in accord with this section.  If an ERISA claimant brings legal action after the required reviews; then the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

(Dkt. 15-1 at 19 ("CLAIMS PROCEDURES").)

On December 11, 2019, Plaintiff submitted to Lincoln National a written request for review of the denied claim. (Compl. ¶ 30.) Along with the request for review, Plaintiff provided a copy of Shaela's paystub and informed Lincoln National that Shaela had been paying the premiums for Voluntary Life insurance. (*Id.*)

On December 20, 2019, Claims Consultant Sara Thompson, writing on behalf of the Appeals Department of Lincoln National, issued a letter denying Plaintiff's appeal for Voluntary Life insurance benefits. In the December 20, 2019 letter, Ms. Thompson states:

> During my appeal review, I contacted Megan Boehm at Priority Dispatch, Inc. She noted their Human Resource system did notify [Shaela] that Evidence of Insurability was needed for the coverage, but they did not receive it and it is still noted as an outstanding requirement in their system.
>
> **Appeal Decision**
>
> Based on our review of the information and the reasons indicated in this letter, we are unable to overturn the original denial of benefits.
>
> The policy states that Open Enrollment will be from May 1st and ending May 31st for eligible Employees to enroll for or to increase their current benefit amounts. Shaela elected coverage through her employer on 04/08/2019, which is outside the Open Enrollment period. She also elected coverage more than 31 days after she originally became eligible for Voluntary Life Insurance. The contract states that Evidence of Insurability is required if you apply to enroll for or increase coverage more than 31 days after you become eligible. During our review, we found that [Shaela] didn't complete Evidence of Insurability forms and therefore our office was not able to review or approve her Voluntary Life coverage. Based on this, we find benefits are not payable and we are unable to overturn the original claim denial.
>
> Please note, Ms. Boehm advised she is sending a refund of premiums to you directly.

(Dkt. 15-3, December 20, 2019 Letter from Lincoln National at 3.)

In addition, the December 20, 2019 letter denying Plaintiff's appeal expressly states: "As a reminder, you have exhausted your first level of appeal." The letter then provides the following instruction:

6

> If you disagree with this decision you may pursue your final administrative appeal. … Such a request must be made in writing and submitted to us at the address below by 02/18/2020.
>
> . . .
>
> . . . . In addition, once all required reviews of your claim have been completed; you have the right to bring a civil action under applicable law.

(*Id.* at 3-4.)

After receiving Lincoln National's December 20, 2019 denial of Plaintiff's first administrative appeal, Plaintiff did the following: (1) lodged a complaint with the State of Utah, Department of Insurance (Compl., ¶ 34); (2) filed a complaint with the Better Business Bureau (Dkt. 17, Opp'n at 13); and (3) emailed the President of Priority Dispatch, Ron McDaniel, regarding Lincoln National's denial of benefits (Compl., ¶¶ 36-37.)

The Better Business Bureau ("BBB") forwarded Plaintiff's complaint to Lincoln National. On January 9, 2020, Lincoln National sent Plaintiff a written response to the BBB complaint. (Compl. ¶ 33.) In the January 9, 2020 letter, Lincoln National referenced the November 20, 2019 denial of Plaintiff's initial claim; Plaintiff's December 11, 2019 letter appealing the denial; and Lincoln National's December 20, 2019 denial of Plaintiff's first administrative appeal. Lincoln National's January 9, 2020 letter concluded with a reminder of the process and deadline for filing a second administrative review, and referenced the instructions provided in the December 20, 2019 denial of the first administrative appeal. In stated, in part:

> At this time, you have the right to file a second level administrative appeal if you disagree with the prior claim and appeal determination. The denial letter included information on how to appeal and advised you that the appeal would need to be filed within 60 days from 12/20/2019. Once you have provided your appeal documentation, we will conduct a new full and fair review.

(Dkt. 17-1 at 4.)

7

On June 29, 2020, Plaintiff filed this action against both Lincoln National and Defendant Priority Dispatch seeking to collect proceeds from the Voluntary Life insurance policy. Plaintiff's Complaint sets forth two causes of action against both Defendants: (1) recovery of benefits under 29 U.S.C. § 1132(a)(1)(B), and (2) breach of fiduciary duty under 29 U.S.C. 1132(a)(3).  On August 6, 2020, Defendant Priority Dispatch filed the present motion to dismiss.

## **DISCUSSION**

Defendant's motion seeks to dismiss Plaintiff's lawsuit in its entirety on the basis that Plaintiff failed to pursue two administrative reviews of Lincoln National's adverse claim decision prior to filing this lawsuit and thus failed to exhaust administrative remedies.  Although "ERISA contains no explicit exhaustion requirement," the "exhaustion of administrative (i.e., company-or plan-provided) remedies is an implicit prerequisite to seeking judicial relief." *McGraw v. Prudential Ins. Co.*, 137 F.3d 1253, 1263 (10th Cir. 1998) (citing *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1206 (10th Cir. 1990)).

> This proposition derives from the exhaustion doctrine permeating all judicial review of agency action, and aligns with ERISA's overall structure of placing primary responsibility for claim resolution on fund trustees.  Otherwise, premature judicial interference with the interpretation of a plan would impede those internal processes which result in a completed record of decision making for a court to review.

*Id.* (citations and internal quotation marks omitted).  "The doctrine 'is necessary to keep from turning every ERISA action, literally, into a federal case.'"  *Whitehead v. Oklahoma Gas & Electric Co.*, 187 F.3d 1184, 1190 (10th Cir. 1999) (quoting *Denton v. First Nat'l Bank of Waco, Texas*, 765 F.2d 1295, 1300 (5th Cir. 1985)).

"Nevertheless, because ERISA itself does not specifically require the exhaustion of remedies … courts have applied this requirement as a matter of judicial discretion." *McGraw v. Prudential Ins. Co.*, 137 F.3d 1253, 1263 (10th Cir. 1998). "In exercising that discretion, district

8

courts have eschewed exhaustion under two limited circumstances: first, when resort to administrative remedies would be futile; or, second, when the remedy provided is inadequate." *Id.*

In this case, Plaintiff does not dispute that the claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) is subject to an exhaustion requirement. Plaintiff asserts that she either complied with or "substantially complied" with the exhaustion requirement, and even if she did not comply, her failure to exhaust should be excused. Additionally, Plaintiff argues that even if her first cause of action is barred for failure to exhaust administrative remedies, the exhaustion requirement does not apply to the second cause of action alleging breach of fiduciary duty.

Exhaustion of Administrative Remedies

Plaintiff argues that the actions she took following the denial of her first administrative appeal were the equivalent of a second administrative appeal and therefore she substantially complied with the exhaustion requirement. More specifically, Plaintiff asserts that her written complaints to (1) the Better Business Bureau, (2) the Utah Department of Insurance, and (3) the President of Defendant Priority Dispatch, were "in substance and effect" additional appeals because the complaints were relayed, albeit indirectly, to Lincoln National. As Plaintiff explains: "The purposes of a second administrative appeal were satisfied" because Plaintiff appealed "directly to [Lincoln National] once," and then appealed "indirectly to [Lincoln National] on several occasions prior to filing her Complaint in this action." (Dkt. 17 at 9.) Plaintiff argues that Lincoln National's January 9, 2020 response evaluated and reconsidered Plaintiff's claim and was, therefore, the equivalent of a second administrative review.

The court disagrees. Plaintiff's written communications to outside agencies are not the equivalent of a second administrative appeal to Lincoln National – the entity responsible for

administering claims under the Plan. Although Lincoln National responded to Plaintiff's BBB complaint, Lincoln National's interest in issuing that response was distinct from its responsibilities under the claim denial appeal procedures outlined in the Plan. Moreover, Lincoln National's response to Plaintiff's BBB complaint explicitly referenced the December 20, 2019 denial of Plaintiff's first administrative appeal and reminded Plaintiff of her right to file a second administrative appeal and the deadline for doing so. The response further explained that once Plaintiff filed a "second level administrative appeal," Lincoln National would "conduct a new full and fair review." (Dkt. 17-1 at 4.) In so doing, Lincoln National made it clear that Plaintiff's BBB complaint and Lincoln National's response did not fulfill the purpose of the second administrative appeal. Based on the foregoing, the court finds that Plaintiff failed to file a second administrative appeal and therefore failed to exhaust her administrative remedies under the Plan.

Next, Plaintiff argues that even if she failed to exhaust her administrative remedies under the Plan, the exhaustion requirement should be waived. (Dkt. 17, Pl.'s Opp'n at 15.) "Generally, a failure to exhaust will be excused in two limited circumstances – when resort to administrative remedies would be futile or where the remedy provided is inadequate." *Holmes v. Colorado Coalition for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1204 (10th Cir. 2014).

"To demonstrate futility, a claimant 'must show her claim would be denied on appeal, and not just that she thinks it is unlikely an appeal will result in a different decision." *C.L. on behalf of H.L. v. Newmont USA Ltd.*, Slip Copy, 2020 WL 3414807, *5 (D. Utah June 22, 2020). Plaintiff argues that a comparison of Lincoln National's December 20, 2019 appeal denial and

Lincoln National's response to Plaintiff's BBB complaint demonstrates futility.  According to Plaintiff:

> Those two denial letters were sent directly to [Plaintiff] by Lincoln [National] and contain substantially the same analysis of the claim, which constitutes a sufficient showing that a pursuit of formal second administrative appeal would be 'clearly useless' because 'her claim would be denied on [the second] appeal.'  We know that [Lincoln National] did or would have denied the second appeal.

(Dkt. 17, Pl.'s Opp'n at 16.)

Plaintiff has failed to show that her claim would have been denied had she filed a second administrative appeal.  Lincoln National's response to Plaintiff's BBB complaint was not a complete and independent review of the claim.  To the contrary, the response explains that a new determination regarding the claim would not be conducted unless and until Plaintiff complied with the process outlined by the Plan and provided the requisite documentation.  The BBB response expressly stated: "Once you have provided your appeal documentation, we will conduct a new full and fair review."  (Dkt. 17-1 at 4.)  Under these circumstances, the court will not excuse Plaintiff's failure to exhaust on futility grounds.

Plaintiff next argues that the court should excuse her failure to exhaust because the "notice of the administrative remedies available" or "how [Plaintiff] was required to pursue them" was confusing and conflicting.  (Dkt. 17, Pl.'s Opp'n at 18.)  *See McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir. 1998) ("The inadequacy exception has been argued in circumstances where a plaintiff asserts that he or she received inadequate notice of the administrative remedies available, or how to pursue them.").

The Plan in this case plainly sets forth the administrative remedies available and how to pursue them.  The Certificate of Group Insurance states: "Before bringing a civil legal action . . . [a] claimant must first seek two administrative reviews of the adverse claim decision."  (Dkt. 15-

11

1 at 19.) In addition, the Summary Plan Description instructs claimants to "refer to your certificate of insurance for more information about how to file a claim, how to appeal a denied claim, and for details regarding the claim procedures." (Dkt. 15-1 at 29.) Finally, Lincoln National's December 20, 2019 appeal denial also referenced the two levels of administrative appeals, stating: "As a reminder, you have exhausted your first level of appeal. If you disagree with this decision you may pursue your final administrative appeal. . . . Such request must be made in writing and submitted to us at the address below by 02/18/2020." (Dkt. 15-3 at 3.) Given these facts, the court does not find that Plaintiff received inadequate notice of the administrative remedies available or how to pursue them.[2]

Therefore, the court concludes that Plaintiff failed to exhaust her administrative remedies by failing to file a second administrative appeal and Plaintiff's failure to exhaust is not excused. Accordingly, Plaintiff's claim for benefits under 29 U.S.C. § 1132(a)(1)(B) is barred, and Defendant's motion to dismiss is granted as to Plaintiffs first cause of action.

Plaintiff's Second Cause of Action: Breach of Fiduciary Duty

Plaintiff argues that "regardless of whether the first cause of action survives," the second cause of action, alleging breach of fiduciary duty under § 1132(a)(3), is not subject to the exhaustion requirement. Exhaustion is generally not required for a claim of breach of fiduciary duty. *See Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999); *Coleman v. Pension Benefit Guar. Corp.*, 94 F.Supp.2d 18 (D.D.C. 2000).

---

[2] Plaintiff also argues that Lincoln National's use of the word "may," in the phrase "you *may* pursue" a final administrative appeal, is confusing and renders the Plan's administrative remedies ambiguous and inadequate. (Dkt. 17, Pl.'s Opp'n at 17.) The court disagrees. First, the "permissive" language identified by Plaintiff comes from Lincoln National's December 20, 2019 letter denying Plaintiff's first administrative appeal, not the Plan. The Plan unambiguously states: "Under the Policy, the claimant *must* first seek two administrative reviews of the adverse claim decision." (Dkt. 15-1 (emphasis added).) As for the language of the December 20, 2019 letter, when considered in context, the word "may" is referring to the condition, "if you disagree with this decision." The complete statement reads: "If you disagree with this decision, you may pursue your final appeal." Read in context, the language is unambiguous.

Defendant claims that even though Plaintiff's second cause of action purports to seek equitable relief based on breach of fiduciary duty under § 1132(a)(3), the second cause of action is merely a "repackaging" of the first cause of action for wrongful denial of benefits under § 1132(a)(1)(B). (Dkt. 18, Def.'s Reply at 4.) According to Defendant, because the "sole dispute is the denial of benefits," and because the relief Plaintiff seeks is the "payment of benefits," the second cause of action is subject to the same exhaustion requirement and must likewise be dismissed for failure to exhaust administrative remedies. (Dkt. 18, Def.'s Reply at 3-4.)

Taking the factual allegations in Plaintiff's Complaint as true, and drawing all reasonable inferences in favor of Plaintiff, the court is unable to conclude that Plaintiff's breach of fiduciary duty claim is merely a repackaging of Plaintiff's claim for benefits under § 1132(a)(1)(B). In sum, Defendant has failed to persuade the court that the second cause of action should be dismissed for failure to exhaust administrative remedies.

Reading the Complaint liberally, as the court must, the causes of action assert different theories of liability. In the first cause of action, Plaintiff seeks benefits pursuant to the policy under § 1132(a)(1)(B). (Dkt. 2, Compl. ¶ 44 ("Lincoln is responsible to pay [Plaintiff] the benefits under the Voluntary Life insurance policy, under the terms of the Plan and ERISA.")) Alternatively, in the second cause of action, Plaintiff seeks equitable relief (in the form of surcharge or equitable estoppel) under § 1132(a)(3) on the theory that the applicable policy was not in effect due to Defendant's fiduciary misconduct; namely, failing to notify Shaela that she needed to submit evidence of insurability, but continuing to collect premiums for the policy causing Shaela to believe she was properly enrolled and insured.[3] (Dkt. 2, Compl. ¶¶ 50, 52-54.)

---

[3] *See generally Soon v. PNM Resources, Inc.*, 2020 WL 8164217, *4-*5 (D.N.M. May 27, 2005) ("[C]ourts have recharacterized fiduciary duty claims under § 1132(a)(3) as denials of benefits under § 1132(a)(1) if the claim depends on interpretation of plan language. In such cases, relief for improper interpretation of plan terms is adequately provided under § 1132(a)(1) . . . . In contrast, if an administrator's conduct is at issue, rather than

13

Said another way, Plaintiff's second cause of action argues that, assuming Plaintiff's claim for benefits was properly denied based on failure to provide evidence of insurability, it was Defendant's breach of fiduciary duty that caused Shaela to fail to provide evidence of insurability. *See, e.g., Soon v. PNM Resources, Inc.*, 2005 WL 8164217, *5-*6 (D.N.M. June 20, 1995) ("Failing to inform a participant of steps to protect eligibility for benefits is also a breach of fiduciary duty, including failing to inform the beneficiary when the fiduciary knows silence might be harmful."). Additionally, Plaintiff's request for monetary relief equal to the amount of benefits owed under the plan does not require a different conclusion. *See CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) ("[T]he fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief. . . . Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a 'surcharge' was 'exclusively equitable.'"); *Silva v. Metro Life Ins. Co.*, 762 F.3d 711, 724 (8th Cir. 2014) (describing the Supreme Court's *Amara* decision and holding that § 1132(a)(3) may allow recovery of "make-whole, monetary relief" in the amount of benefits owed under the plan).

At this stage in the litigation, taking Plaintiff's factual allegations as true, Plaintiff's second cause of action is sufficient to survive Defendant's motion to dismiss. *See Silva v. Metropolitan Life Ins. Co*, 762 F.3d 711, 727 (8th Cir. 2014) (declining to dismiss cause of action as duplicative and stating: "At the motion to dismiss stage, however, it is difficult for a court to discern the intricacies of the plaintiff's claims to determine if the claims are indeed duplicative, rather than alternative").

---

interpretation of the plan, and that conduct has deprived the plaintiff of an otherwise viable claim for benefits, courts have not recharacterized the claim.").

**CONCLUSION**

For the reasons stated, Defendant's motion to dismiss the first cause of action is GRANTED.  Defendant's motion to dismiss the second cause of action is DENIED. IT IS SO ORDERED.

DATED this 2nd day of November, 2020.

BY THE COURT:

Dee Benson
United States District Judge